UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-CV-81754-RUIZ/REINHART

ESURANCE PROPERTY AND
CASUALTY INSURANCE CO.,

                Plaintiff,

vs.

KHRYSTAL VERGARA, RICARDO
VERGARA-GONZALEZ, RYAN ALLI,
VEDA SATI SADHU, AARON ABELLA,
and ELIANA A. OLIVEIRA DE SOUZA ABELLA,

                Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING MOTIONS FOR SUMMARY JUDGMENT [ECF Nos. 54, 60]

This case presents the question whether a ride-sharing vehicle falls under an insurance policy exclusion for a "public or livery conveyance." I find that it does. I therefore RECOMMEND that Plaintiff's Motion for Summary Judgment (ECF No. 54) be GRANTED and the Defendants' Motion for Summary Judgment (ECF No. 60) be DENIED.

## UNDISPUTED FACTS[1]

While driving his 2018 Kia Sorrento as an "Uber Driver-Partner" on September 22, 2019, Aaron Abella got into an accident with cars driven by Khrystal Vergara and Lara Palmer. Mr. Abella had two passengers in his car at the time of the accident – Ryan Alli and Veda Sati Sadhu. Ms. Vergara and her husband, Ricardo Vergara-Gonzalez, sued Mr. Abella and his wife, Eliana A. Oliviera de Souza Abella (who was the co-owner of the Kia Sorrento), in Palm Beach County Circuit Court for personal injuries arising from the accident. Mr. Abella's wife has been dismissed with prejudice from the state court lawsuit. ECF No. 49-4.

At the time of the accident, the Kia Sorrento was insured by Esurance Property and Casualty Insurance Company under policy number PAFL-007437044 ("the Policy"). Mr. Abella was a named insured under the Policy. Policy Exclusion 1(G) states:

> ***"We"*** have no duty to defend and do not provide Liability Coverage for any ***"insured"***: . . . For that ***"insured's"*** liability arising out of the ownership or operation of a vehicle while it is used as a public or livery conveyance.

DE 49-1 at 15 ("the Livery Exclusion").

Uber is a ride-sharing service, also known as a Transportation Network Company. Uber is available to the general adult public, subject to Uber's Community Guidelines. Customers use a freely-available software program called an app to notify

---

[1] These facts are taken from the parties' Joint Statement of Undisputed Material Facts (ECF No. 73), Plaintiff's Statement of Undisputed Material Facts (ECF No. 66) and Defendants' Statement of Undisputed Facts (ECF No. 61).

the Uber network that they would like a ride from their current location to a different location. The Uber network then notifies Uber drivers of the customer's request.

An individual driver can, but is not required to, offer to pick up the customer. Uber drivers are prohibited from discriminating against someone based on traits such as age, color, disability, gender identity, marital status, national origin, race, religion, sex, or sexual orientation. Uber Community Guidelines state: "Intentionally refusing or canceling requests solely for the purpose of avoiding a particular neighborhood due to the characteristics of the people or businesses that are located in that area is not allowed."

If at least one driver offers to pick up the customer, the Uber network will pair the customer with a driver. The driver then picks up the customer and transports the customer to the desired location in return for a fee.

Uber drivers must personally own the vehicle they will use for Uber rides or must be listed as an insured driver on the vehicle's insurance policy. Some Uber drivers are exclusively employed as Uber drivers and others are Uber drivers as supplemental employment. Further, the vehicles used by an Uber driver might be exclusively used for transporting Uber passengers or the vehicles used by an Uber driver may be used in a personal capacity in addition to transporting Uber passengers.

In this case, there is no evidence whether Mr. Abella was exclusively employed as an Uber driver, or whether Mr. Abella drove for Uber as supplemental employment. Additionally, there is no evidence whether Mr. Abella used his vehicle

exclusively for transporting Uber passengers, or whether he used the vehicle in a personal capacity in addition to transporting Uber passengers.

## **DISCUSSION**

Judge Ruiz has referred to me the parties' cross motions for summary judgment on all three Counts of the Second Amended Complaint ("SAC"). ECF No. 57; ECF Nos. 54, 60. The SAC seeks declaratory judgments that (1) the Exclusion applies, (2) Esurance has no duty to defend the state court lawsuit, and (3) Esurance has no duty to indemnify for any damages arising from the accident. ECF No. 49. I have reviewed the motions, the responses, the replies, and the statements of material facts.

As both parties ask the Court to determine, as a matter of law, Esurance's obligations under the Policy, I address both summary judgment motions together.

**Summary Judgment**

The legal standard for summary judgment under Federal Rule of Civil Procedure 56 is well-settled:

> A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." A fact is material if it "might affect the outcome of the suit under the governing law." The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.
>
> . . .
>
> The moving party shoulders the initial burden of showing the absence

> of a genuine issue of material fact. Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.

*Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1307–08 (S.D. Fla. 2014) (J. Bloom)

(citations omitted).

**Declaratory Judgment**

The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. "[T]he Federal Declaratory Judgment Act does not create any substantive rights or causes of action." *Balgobin v. JPMorgan Chase Bank, N.A.,* No. 3:18-CV-00114, 2019 WL 1046835, at *5 (S.D. Tex. Feb. 15, 2019) (J. Edison) (internal quotations and citation omitted).

"[A] declaratory judgment serves to clarify the legal relations and is not for the purpose of making factual determinations." *Medmarc Casualty Ins. Co. v. Pineiro & Byrd PLLC,* 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) (J. Marra). A declaratory judgment does not decide historical disputes. It addresses only present and future legal rights and relationships. "Past injuries alone generally do not establish declaratory judgment jurisdiction." *Bacardi USA, Inc. v. Young's Market Co.,* 273 F. Supp. 3d 1120, 1128 (S.D. Fla. 2016) (J. Seitz). "[Q]uestions regarding whether torts have been committed or a contract was adequately performed is unrelated to the purpose behind the Declaratory Judgment Act." *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC,* 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009) (J. Marra). The

Court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995), cited in *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 136 (2007). That discretion is "exceptionally broad." *Otwell v. Alabama Power Co.,* 747 F.3d 1275, 1280 (11th Cir. 2014); *see Stevens v. Osuna,* 877 F.3d 1293, 1311 (11th Cir. 2017) (internal quotations and citation omitted) (explaining that "even when a civil action satisfies federal subject matter jurisdictional prerequisites—a district court still maintains discretion about whether and when to entertain an action under the Declaratory Judgment Act"). "'In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'" *Stevens,* 877 F.3d at 1311 (quoting *Wilton,* 515 U.S. at 288).

### Contract Interpretation of an Insurance Policy

"In Florida, '[w]here the duty of an insurer rests upon the legal effect of the provisions of an insurance policy, the interpretation of the policy is a matter of law for the Court to determine, and is therefore amenable to summary judgment.'" *Sparta Ins. Co. v. Colareta,* 990 F. Supp. 2d 1357, 1363 (S.D. Fla. 2014) (J. Rosenbaum) (quoting *Great Am. Fid. Ins. Co. v. JWR Const. Servs., Inc.,* 882 F. Supp. 2d 1340, 1350 (S.D. Fla. 2012) (J. Huck)). "Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Prudential Prop. & Cas. Ins. Co. v. Swindal,* 622 So. 2d 467, 470 (Fla. 1993). "[A]n insurance policy should be construed in its entirety and given the construction which

reflects the intent of the parties." *PowerSports, Inc. v. Royal & Sunalliance Ins. Co.,* 307 F. Supp. 2d 1355, 1358 (S.D. Fla. 2004) (J. Ryskamp) *aff'd* 128 F. App'x 95 (11th Cir. 2005). The terms of an insurance policy "should be taken and understood in their ordinary sense, and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties – not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.,* 819 So. 2d 732, 736 (Fla. 2002) (citation omitted). The burden rests on the insurer to show that exclusions in a policy apply. *See, e.g., U.S. Concrete Pipe Co. v. Bould,* 437 So. 2d 1061, 1065 (Fla. 1983).

The first step is to determine whether the policy provision is unambiguous or ambiguous. If there is no ambiguity, the contract must be construed according to its plain language and given effect as written. *See Sparta Ins. Co.,* 990 F. Supp. 2d at 1363. A policy provision is ambiguous if there are two competing, reasonable interpretations of that provision. *See Cont'l Ins. Co. v. Roberts,* 410 F.3d 1331, 1334 (11th Cir. 2005). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 34 (Fla. 2000). "[W]here policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer." *Glover v. Liberty Mut. Ins. Co.,* 418 F. Supp. 3d 1161, 1171 (S.D. Fla. 2019) (J. Altonaga) (quoting *State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So. 2d 1072, 1076 (Fla.1998)).

7

> In construing an insurance policy, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect. Indeed, a single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders.

*Gen. Star Indem. Co. v. West Florida Village Inn, Inc.,* 874 So. 2d 26, 30 (Fla. 2d DCA 2004) (internal citations omitted). *See also Steadfast Ins. Co. v. Celebration Source, Inc.,* 240 F. Supp. 3d 1295, 1300 (S.D. Fla. 2017) (J. Scola) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.") (quoting Fla. Stat. § 627.419 (2010)).

"When a term in an insurance policy is undefined, it should be given its plain and ordinary meaning and courts may look to legal and non-legal dictionary definitions to determine such a meaning." *Gov't Employees Ins. Co. v. Macedo,* 228 So. 3d 1111, 1113 (Fla. 2017) quoting *Botee v. S. Fid. Ins. Co.,* 162 So.3d 183, 186 (Fla. 5th DCA 2015)). "'The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts.' But 'when an insurer fails to define a term in a policy, the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided.' Even if the parties had expressed competing, reasonable interpretations of this term to create ambiguity, this ambiguity would have to be resolved against Defendant and in favor of Plaintiff." *Black Knight Prot., Inc. v. Landmark Am. Ins. Co.,* No. 13-22838-CIV, 2014 WL 11638574, at *5 (S.D. Fla. Dec. 30, 2014) (J. Bloom) (citations omitted). "[I]n Florida, insurance exclusion clauses are construed strictly

against the insurer." *Amica Mut. Ins. Co. v. Rsui Indem. Co.,* No. 9:19-CV-80010, 2019 WL 1015203, at *5 (S.D. Fla. Mar. 4, 2019), *report and recommendation adopted,* 2019 WL 7899723 (S.D. Fla. May 9, 2019) (J. Rosenberg) (citing *Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 34 (Fla. 2000)).

**The Livery Exclusion**

The Policy does not define "public or livery conveyance" but this term has been used for over 80 years in automobile insurance policies, including in Florida. *See, e.g., Kennedy v. Lumbermen's Mut. Cas. Co.,* 264 So. 2d 32, 33 (Fla. 3d DCA 1972) (policy excluded "an automobile while used as a public or livery conveyance."); *Pender v. United States,* 866 F. Supp. 1129, 1132 (N.D. In. 1994) (policy excluded "liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance."); *Preferred Risk Mut. Ins. Co. v. Thomas,* 372 F.2d 227, 231 n. 3 (4th Cir. 1967) (policy excluded any claim arising from the use of the vehicle "as a public conveyance or livery."). Over this time, the term has acquired a commonly–understood meaning:  it refers to offering transportation to the general public in return for money without limiting the transportation services to a particular group of people. Or, stated more legalistically, it means "the indiscriminate use of the vehicle in conveying the public and a holding out of the vehicle to the general public for the carrying of passengers for hire."  Couch on Insurance 3d § 120:95 (2021) (footnotes omitted) (collecting cases); *see Spears v. Phoenix Ins. Co.*, 149 So. 2d 118, 122 (La. Ct. App. 1963) (Exclusion intended to cover taxicabs, buses, and "any other vehicle where the operator uses the vehicle as a means of conveying members of the

9

public, usually for a price, but without discrimination as to the persons within the class of persons to be transported, but indiscriminately for any who may call for such service."). "[T]he primary factor in determining whether a vehicle is used as a public or livery conveyance depends upon whether the transportation is generally available to the public rather than whether any money has been or will be paid." *St. Paul Mercury Indem. Co. v. Knoph,* 251 Minn. 366, 369, 87 N.W. 2d 636, 638 (1958) (tracing history of exclusion).

Paradigmatically, a public or livery conveyance includes a taxicab. *Hunt Leasing Corp. v. Universal Underwriters Ins. Co.,* 123 A.D. 2d 602, 603, 506 N.Y.S. 2d 886 (1986) ("It is patently clear from the allegations of the complaint that the subject vehicle was being used as a public or livery conveyance, i.e., a taxicab."). It also includes a charter bus or limousine company. *Scottsdale Surplus Lines Ins. Co. v. Keystone Auto Sales,* No. 19-cv-0050, 2019 WL 3858653, at *3 (N.D. Ohio Aug. 16, 2019). Any of those modes of transportation can be hired by a member of the general public.

It does not include (1) a car pool among friends or coworkers, *see Allor v. Dubay,* 317 Mich. 281 (1947) (paid share-the-ride arrangement among coworkers not a public or livery conveyance); (2) a vehicle used to transport campers, hotel guests or corporate employees, *see Matter of Federal Ins. Co. v. Provenzano,* 300 A.D. 2d 485, 486 (2d Dept. 2002) (minibus used to transport day campers on occasional trips not a livery conveyance because not being "used indiscriminately to carry the general public for hire."); *Elliott v. Behner,* 96 P.2d 852, 856–57 (1939) (truck transporting

workers to a job location was not a public or livery conveyance); *Thomas,* 372 F.2d at 231 n. 3 (in dicta, doubting that "a vehicle used to carry five passengers 30 miles a day, six times a week, at a charge, is a vehicle used in 'public conveyance or livery.'"); *Lakeshore Dev. Corp. v. Gulf Ins. Co.,* 353 F.2d 163 (5th Cir. 1965) (hotel courtesy car not a "public or livery conveyance."); or (3) a vehicle rented for personal use. *Greyhound Rent-A-Car, Inc. v. Carbon,* 327 So. 2d 792, 793 (Fla. 3d DCA 1976). Only a defined subset of the general public can use these vehicles, even if the user pays for the privilege.

Defendants argue that the Livery Exclusion does not apply because Mr. Abella's Kia was not made indiscriminately available to the public because it was "a private vehicle that is sometimes operated privately and sometimes operated under a rideshare/TNC agreement."  ECF No. 58 at 6–8; *see id.* at 9 ("Mr. Abella's service as an Uber driver was limited to the occasions on which he was logged into the app and not driving privately, and he was not on call at all times to anyone who might require a ride."); ECF No. 60 at 5 ("Here, the legal and nonlegal definitions of 'public or livery conveyance' do not encompass private vehicles that are sometimes used as Ubers."); *id.* at 7 ("Mr. Abella's vehicle was a private vehicle that was only sometimes operated as an Uber."). Despite these arguments in Defendants' pleadings, the Joint Statement of Undisputed Facts states, "In this case, there is no evidence whether Mr. Abella used his vehicle exclusively for transporting Uber passengers, or whether he used the vehicle in a personal capacity in addition to transporting Uber passengers." ECF No. 73 ¶ 18. Regardless, whether Mr. Abella used the Kia exclusively to

transport Uber passengers is irrelevant. By its plain terms, the Livery Exclusion does not look to the universe of all the ways the vehicle is used. It focuses on how the vehicle was being used when the insurance claim arose: it excludes coverage for "liability arising out of the ownership or operation of a vehicle *while it is used as* a public or livery conveyance." Whether the vehicle is used for other purposes at other times is irrelevant. All that matters is whether Mr. Abella was operating the Kia as a public or livery conveyance when he had the accident on September 22, 2019.

Defendants have not cited any case holding that other uses of the vehicle are relevant to whether the Livery Exclusion applies; more specifically, they cite no cases holding that the Livery Exclusion requires that the vehicle be used *exclusively* as a public or livery conveyance. To the contrary, other courts have found that identically–worded exclusions apply even though the vehicle in question is not used exclusively as a public conveyance. *See, e.g., Spears v. Phoenix Ins. Co.,* 149 So. 2d 118 (La. 1963); *U.S. Fidelity and Guar. Co. v. American Interinsurance Exchange,* 718 S.W. 2d 955 (Ky. Ct. App. 1986). Even Defendants' primary authority, *Pender v. United States,* 866 F. Supp. 1120 (N.D. Ind. 1994), involved an insured who used her personal vehicle sometimes to deliver U.S. Mail. The *Pender* court's decision that the exclusion did not apply did not depend on whether the vehicle was a full-time public or livery conveyance.

Defendants further argue that the Livery Exclusion is ambiguous because the term "public or livery conveyance," in particular the "indiscriminate use" requirement, is subject to multiple interpretations. *Id.* at 8. Defendants rely heavily

on *Pender*. There, the insured had an accident while driving her private vehicle as a rural route carrier for the U.S. Postal Service. Her duties "included the delivery and pick-up of mailable materials from mailboxes along her assigned route." *Id.* at 1132. "Although the U.S.P.S. can be used by anyone who wants mail delivered, provided that postage or a fee is paid, [the insured] was only authorized to take mail for delivery from her assigned duty station and bring any mail to be delivered through the system to that station." *Id.* The issue presented was whether the "public or livery conveyance" exclusion of the insured's private automobile insurance policy applied.

The *Pender* court noted that the term "public or livery conveyance" is "uniformly defined to include only vehicles which are 'used indiscriminately in conveying the public, without limitation to certain persons or particular occasions or without being governed by special terms." *Id.* at 1136. It explained, "When an insured's vehicle is used to carry property or persons in connection with the insured's job and in accordance with limitations established by the employer, as in this case, the interpretation of the term varies. Some courts find that there is no indiscriminate public use if the insured can only carry property and persons that meet certain guidelines established by the employer." It noted, however, that the exclusion "has been interpreted more broadly to include all vehicles that are used to carry persons or property regardless of the limitations placed on the use of the vehicle." *Id.* at 1137. It concluded that this ambiguity required it to apply the narrower interpretation of the exclusion. Under that interpretation, the exclusion did not apply because the insured's use of the vehicle at the time of the accident was limited by her employer –

she "provided service only to customers specified by the U.S.P.S. and her route was determined by the U.S.P.S." *Id.*

Here, the Livery Exclusion applies even under the more narrow interpretation recognized in *Pender*. So, even assuming an ambiguity exists and it must be construed against the insurer, the Livery Exclusion applies. For purposes of the Livery Exclusion, an Uber vehicle is materially indistinguishable from a taxicab. Both offer rides to the general public in return for money. Neither discriminates in selecting its customers, that is, neither limits its services to an identifiable subset of people (such as members of a particular club, guests at a particular hotel, or employees of a particular company). The customer, not Uber, determines the destination of travel.

I recognize that an Uber driver is not required to pick up every person who uses the app to ask for a ride; a taxi driver is not required to pick up every person who hails the cab, either. I also recognize that Uber is not available to the general public without some restrictions. A member of the general public must create an Uber account in order to use the app, an Uber user must be 18 years old, and Uber reserves the right to cancel the user's account. *See* Uber Terms of Use, https://www.uber.com/legal/en/document/?country=pakistan&lang=en&name=gener al-terms-of-use (last visited June 20, 2021). No similar conditions exist for someone wanting to hail a taxi. But, like Uber, a charter bus company or limousine service might refuse to provide transportation under certain circumstances, such as, to a minor, to someone who previously used the service abusively, or to someone who does not have a credit card. Also, there is no evidence in the record that Uber applies a

meaningful screening process to persons who want to create an account, other than requiring them to be older than 18 and have a valid payment method. *See id.* In that regard, Uber is effectively available to the entire adult public. In any event, these limited restrictions on accessing an Uber vehicle do not rise to the level of other restrictions that have been found to make a vehicle a non-public conveyance; put differently, the limited restrictions on accessing an Uber vehicle do not change the fact that the vehicle is available to the general public indiscriminately in the same manner as other vehicles that qualify as "public or livery conveyances."

Finally, Defendants point to the Florida Statute 627.748, but that statute has no relevance here. It is a regulatory statute enacted by the legislature. This case involves an insurance contract between private parties. The statute does not purport to modify the insurance contract, nor does it define the term "public or livery conveyance."

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court **GRANT** summary judgment to Plaintiff, **DENY** summary judgment to Defendants, and enter declaratory judgment for Plaintiff on Counts I–III.

<u>**NOTICE OF RIGHT TO OBJECT**</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, II, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 29th day of June, 2021 at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE